## HARRY HAMBERLIN v. MRS. A. C. ASTON.

### No. 3986.   Decided December 20, 1924.

### (267 S. W., 684).

**1.—Landlord and Tenant—Bond for Distress Warrant.**

The bond required to be given by a landlord suing out a distress warrant must have "two or more good and sufficient sureties" (Rev. Stats., art. 5490).   Where signed by only one surety it should be quashed on motion therefor.   (Pp. 265, 266).

**2.—Landlord and Tenant—Distress for Rent—Exemption—Tools of Trade.**

The landlord has no lien for rent on the tools of trade of the tenant on the rented premises, such as the chairs and equipment of a barber shop. (Pp. 266-272).

**3.—Same—Statutes Examined.**

Article 3785, subd. 5, Revised Statutes and article 3788, subd. 3, exempt from forced sale all tools of trade.   The tenant's exemptions, by article 3793, did not apply to rents or advances by a landlord or to other debts secured by a lien on the property.   But article 5490, which gives the landlord a lien on all other property on the rented premises, does not by its terms apply to property exempt from forced sale by other articles; and its effect in preserving such exemption as against the landlord's claim for rent is not nullified by article 3793.   (Pp. 266-272).

**4.—Cases Discussed.**

St. Louis Type Foundry v. Taylor, 35 S. W., 691; Campbell v. Honaker's Heirs, 166 S. W., 74; Harris v. Townley, 161 S. W., 5; approved and followed. Green v. Raymond, 58 Texas, 80; McFarland v. Hammond, 106 Texas, 579; discussed.   (Pp. 267, 271).

Questions certified from the Court of Civil Appeals for the Second District, in an appeal from Hood County.

The Supreme Court, having referred the questions certified to the Commission of Appeals, Section B for their opinion thereon, here adopts same as its answer.

*Estes, Estes & Roark,* for appellant.

The bond with only one surety should have been quashed.   Rev. Stats., art. 5480; Johnson v. Erskine, 9 Texas, 1; Lawton v. State, 5 Texas, 270; Warren v. State, 21 Texas, 510.

The property, barber's tools, was exempt from forced sale for rent. Betz v. Maier, 12 Texas Civ. App., 219, 33 S. W., 711; Fore v. Cooper 34 S. W., 341; Harris v. Townley, 161 S. W., 5; Const. art. 16, sec. 49; Rev. Stats., art.   5490, 3785, 3793; Green v. Raymond, 58 Texas, 80; St. Louis Type Foundry v. Taylor, 35 S. W., 691;

Campbell v. Honaker's Heirs, 166 S. W., 74.

No briefs for appellee were on file.

MR. PRESIDING JUDGE POWELL delivered the opinion of the Commission of Appeals, Section B.

This cause is before the Supreme Court upon the following certificate from the Honorable Court of Civil Appeals of the Second District:

"The appellee here filed suit in the justice court of Hood County against the appellant for rent, in the sum of $66.00. She further had issued out of the justice court a distress warrant and the constable levied upon the barber chairs, tools and other equipment in the barber shop, located in plaintiff's building. The bond given for the issuance of the distress warrant and filed by the appellee had only one surety. Upon the trial, the defendant moved to quash this bond because it did not comply with the requirements of article 5480, Rev. Statutes, and was not signed by 'two or more good and sufficient sureties.' This motion was overruled both in the justice court, and in the county court, and on an appeal to this court by the defendant, the assignment directed to the overruling of said motion was sustained.

"Appellant also alleged error in the county court's action in foreclosing a lien under the distress proceedings on the tools and apparatus of the defendant below. He urges that all tools and apparatus and books belonging to any trade or profession are exempt from forced sale under our exemption statutes. Articles 3785 and 3788, Rev. Statutes. He relies to support his contention on the cases of Green v. Raymond, 58 Texas, 80; Harris v. Townley, 161 S. W., 5, by the Austin Court of Civil Appeals; St. Louis Type Foundry v. Taylor, 35 S. W., 691, by the Dallas Court of Civil Appeals; Campbell v. Honaker's Heirs, 166 S. W., 74, also by the Dallas Court of Civil Appeals. These four cases involve the question of exemption *vel non* of the tools and apparatus of the tenant from forced sale by the landlord for rent. Other cases cited by appellant were not for rent, and hence are not in point. We overruled this assignment for the following reasons:

" 'The Legislature shall have power, and it shall be its duty, to protect by law from forced sale a certain portion of the personal property of all heads of families, and also unmarried adults, male and female.' Art. 16, sec. 49, Constitution of Texas.

"Thus it will be seen that to the Legislature is confided by the Constitution the determination of what kind and amount of personal property shall be exempt from forced sale, and the Legislature has, under the Constitution, the power to exempt from the general

exemption statutes certain debts or causes of action, as it did in article 3793, Rev. Statutes, which article provides that:

" 'The exemption of personal property provided for in this chapter shall not apply when the debt is due for rents and advances made by a landlord to his tenant, under the provisions of title eighty, or to other debts which are secured by a lien on such·property.'

"This article was passed April 2, 1874. The case of Green v. Raymond, 58 Texas, 80, was decided in 1882, and was a suit upon a bond dated March 11, 1871. The suit was filed August 25, 1873. Thus it will be seen that the decision in Green v. Raymond, that the printing press, type and cases used in a printing office were exempt from forced sale for rent, was made, in view of the law, not as it was at the time the decision was rendered, but as it was at the time the cause of action arose. Hence, the Supreme Court in that case evidently did not consider the effect that article 3793 has upon our exemption statutes.

"Article 5475, enacted April 4, 1874, and amended March 5, 1915, by the Acts of the 36th Legislature, General Session, 1919, p. 170, also refers to and governs the right of the landlord to a preference lien upon the property of the tenant upon the rented premises for any rent that may become due. We were of the opinion that in view of these statutes, articles 3793, 5475 and 5490, a landlord has a preference lien for his rent upon the tools and apparatus belonging to the tenant upon the rented premises. But we recognize that we are in conflict with the Dallas and Austin Courts of Civil Appeals in the decisions heretofore cited.

"By reason of this conflict, we deem it advisable to certify to your Honors the following questions:

"1. Were we correct in holding that the trial court erred in refusing to sustain the motion to quash the bond given in the distress proceedings by reason of its having only one surety?

"2. Were we in error in holding that the landlord has a preference lien upon the tools and apparatus and supplies belonging to the tenant and then on the rented premises?"

The opinion by the Court of Civil Appeals in this case accompanies the record and was written by Justice Buck. We think the court correctly held that the bond in this case should have been quashed because it did not comply with Article 5480 of our statutes. Justice Buck, in commenting upon this phase of the case, spoke as follows:

"The bond given for the issuance of the distress warrant and filed by Mrs. Aston had only one surety. Upon the trial, defendant moved to quash this bond, because it did not comply with the requirements of article 5480, Revised Statutes, which requires the bond to be given in such cases shall be signed by the plaintiff, or his agent

or attorney, with 'two of more good and sufficient sureties'. We believe that the motion to quash should have been sustained and that reversible error is shown in the action of the court in overruling the motion. A claimant's bond given in distress warrant proceedings is a statutory bond, and the general rule on the subject of statutory bonds is that when directed to be made in a peculiar mode or with certain requirements that mode or the requirements specified must be pursued. Johnson v. Erskine, 9 Texas, 1; Lawton v. State, 5 Texas, 270. While it has been held in Bernheim v. Shannon, 21 S. W., 386, in an action against the sheriff for taking a bond with only one surety thereon, that such bond, while invalid as a statutory bond, will be sustained as a common law obligation, however, we believe where timely objection is made to the bond, and a motion to quash has been filed, that it is reversible error for the court to refuse to quash the bond. This is a summary remedy given by statute to the plaintiff, and the defendant should be protected in every statutory way from any probable loss arising by reason of the proven improper issuance of the writ or warrant. One of these safeguards is that a bond must be given with two or more good and sufficient sureties. The first assignment is sustained."

For the reasons so well stated by the Court of Civil Appeals, to which we can add nothing, we have concluded that it made proper disposition of this assignment of error. We can see no reason in the world why our courts should not follow the statutes where the language thereof is plain and unmistakable. When our statute says that a bond must be signed by two or more good and sufficient sureties, it does not mean that it is sufficient when it has only one surety. Certainly, when the defendant in the case makes timely objection to this insufficiency of the bond, he is entitled to have the bond quashed. If the lower courts refused to give him his statutory rights, the case should be reversed because of such refusal. Therefore, we recommend that the first question certified herein be answered in the affirmative.

Article 3785 of Vernon's Sayles' Revised Civil Statutes of Texas provides that "the following property shall be reserved to every family, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as hereinafter provided".

Subdivision 5 of said statute lists as so exempt "all tools, apparatus and books belonging to any trade or profession".

By subdivision 3 of Article 3788 of our statutes these same properties are reserved to "persons who are not constituents of a family, exempt from attachment, execution and every other species of forced sale".

Several other Articles of these Acts of 1874 speak of other exemptions.

Chapter 1 of Title 55 of the statutes then closes with Article 3793.

We agree with the Court of Civil Appeals in its view that the Constitution of Texas confided to the Legislature "the determination of what kind and amount of personal property shall be exempt from forced sale, and also the power to except from the general exemption statutes certain debts or causes of action".

But, in ascertaining what the Legislature intended to do, so far as the facts in the instant case are concerned, we find ourselves unable to concur in the conclusion of the Court of Civil Appeals.

We have been unable to find a case anywhere in line with the Court of Civil Appeals. . Justice Buck alludes to the fact that Justice Hawkins referred to the case of Green v. Raymond in his dissenting opinion in McFarland v. Hammond, 106 Texas, 579, 173 S. W., 645. This might possibly convey the impression that the majority opinion of our Supreme Court in that case was to the contrary. But, upon investigation, we find that the Supreme Court in that case granted a motion to dismiss the application for writ of error for want of jurisdiction. The exemption laws were not discussed by Judge Phillips in that opinion. Judge Hawkins dissented on granting the motion to dismiss the writ of error and then proceeded to outline his views as to the merits of the case. In that portion of his opinion he refers with approval. to the decision in Green v. Raymond, supra.

The Court of Civil Appeals relies upon Articles 3793, 5475 and 5490 as authority for its decision. The first Article mentioned has already been quoted by that court in its certificate. Article 5475 has been amended several times, but it has *never been written* so as to give the landlord any lien on anything except "animals, tools and other property furnished by the landlord to the tenant, and the crop raised on such rented premises". The facts in the instant case give the landlord no lien under Article 5475, because the latter furnished none of the articles in suit, and the tenant raised no crops in the building he occupied.

Article 5490 has likewise been amended several times, but each time it has been written, it closed with this language:

"But, this article shall not be construed as in any manner repealing or affecting any act exempting property from forced sale."

This Article was enacted in 1879, in 1889 and in 1919. It always concluded with the language just quoted. In the main, the Article merely gave to all persons leasing or renting any residence, storehouse or other building a preference lien upon "all the property of a tenant in such residence, storehouse or other building, for the payment of the rents due and that may become due".

If the landlord in the instant case is entitled to any lien, it is by virtue of Article 5490. The property in controversy was located in Mrs. Aston's building, and but for the last clause in this statute, she would be given a lien therein. But, we are at a loss to see how this statute gives a lien to this landlord, when it expressly gives effect to the exemption statutes of our State, and which latter statutes expressly exempt the property in suit, unless Article 3793 itself provides that all claims for rent, under any and all circumstances, shall override all exemption statutes. We do not think Article 3793 so provides. Nor do we think that Article 5490 in referring to any Act exempting property from forced sale could have possibly referred to Article 3793 which does not exempt property, but which takes away the exemption under certain circumstances.

Title 55 of our statutes was enacted, in the main, to establish certain exemptions, real and personal. But, the Legislature decided to permit the owners of *personal property* to create a lien thereon to secure debts. Hence, Article 3793 expressly provided that the exemptions would yield to a debt secured by a lien created and given by the owner of the property. Our decisions hold that a person can make a valid mortgage on exempt personal property under this statute.

Not only was this exception to the exemptions provided for, but the Legislature saw that certain provisions of Title 55 would be in conflict with certain provisions of Title 80 (landlord and tenant statutes). For instance, Article 5475 gave the landlord a lien for rents and advances on the crops raised by the tenant on the rented premises. Subdivision 15 of Article 3785 exempted "forage on hand for home consumption". Under one statute, part of crops grown would be exempt. Under the other, this same property would be subject to debt for rent and advances. So, the Legislature provided, in Article 3793, that where the "debt is due for rent and advances made by a landlord to his tenant, under the provisions of Title 80", the exemptions of personal property in Title 55 should not apply. In other words, that the provisions of Title 80 would control in case of conflict with exemption provisions of Title 55. If the Legislature had intended for Article 3793 to apply to any and all debts for rent, under any and all circumstances, as seems to be held by the Court of Civil Appeals herein, and not merely to the debts for rent as provided for and limited by Title 80 of our statute, there would have been no necessity for referring to said Title in writing Article 3793. It will not be presumed ordinarily that the Legislature employed needless or meaningless language or words.

That our view of the purpose of the Legislature in enacting Article 3793 is correct is borne out in part by Sayles' Texas Civil Statutes

published in 1888. On page 773 of Vol. 1 thereof this Article is published. It is referred to as the Act passed by the 14th Legislature, p. 56. Referring to the Acts of that Legislature, in the place mentioned, we find the law stated thus:

. "And such lien as to agricultural products and as to animals and tools furnished as aforesaid shall be superior to all laws exempting such property from forced sale."

Again, by referring to the Revised Statutes of 1879, p. 342, we find that Article 2342 there published, and which is the same Article as 3793 referred to in this opinion, was written by the codifiers by way of amplication of the language just above quoted. The Revised Statutes of 1879 aforesaid, in connection with this Article as drafted by the codifiers, cites page 56 of the Acts of the 14th Legislature as the authority for this statute. Therefore, it seems clear that the basis of this statute was this language above quoted and which was embodied in the Act of 1874 aforesaid.

The Revised Statutes of 1879, as recommended by the codifiers, were enacted by the Legislature several months before the *original form* of what is now Article 5490 was enacted.

We think it was clearly the intention of Article 3793 to provide only that exemptions would not apply where in conflict with Title 80. We cannot perceive why the Legislature in Article 3793, which was written in connection with the exemption statutes, should be more liberal to landlords, as against their tenants, than the very statutes which were written on the very relation of landlord and tenant itself.

This brings us to a discussion of Article 5490, being the only Article which could possibly cover the instant case and create a statutory lien in favor of the landlord. This Article was first enacted in 1879, five years after the original basis of Article 3793 ·was written. It cannot be said that Article 3793 was written in the light of a statute which was itself not written at that time. But, in order that there might be no possible conflict between Article 3793 and Article 5490, as and when the latter became a part of Title 80, said Article 5490 expressly declared that nothing therein contained would repeal or affect any Act exempting property from forced sale. If this provision has no effect, as the Court of Civil Appeals must think, then why was it included in this Article of the statutes? Or, if it had been the intention of the Legislature to give this lien on all property of a tenant on the rented premises, it could have provided that all such property, including that otherwise exempt under Title 55, should be subject to the lien for rent. Or, since the statute had given the lien on "all the property" of the tenant in the rented house, and since Article 5490 has become a part of Title 80, it might

have created the lien, if the last clause therein had not been written there. But for this final clause in Article 5490, already referred to, that Article, in connection with Article 3793, would probably have given a lien on the property in suit. But, since Article 5490 expressly recognizes all exemption statutes and provides for their continued operation, then Article 3793 does not have any effect upon 5490. The Legislature, in enacting Article 5490, removed all ground for conflict by inserting therein the last clause which has already been quoted.

Articles 5475 and 5490 treat all tenants alike. Each Article permits the debtor to keep the same property exempt from his debts unless it be property furnished him by the landlord. So far as the the property already owned by the tenant is concerned, it is exempt alike under each of these Articles. Articles 5475 does give the landlord a lien for rents and advances upon all crops produced upon the rented land. But, Article 5490 gives the landlord a lien on what a man makes and adds to his business conducted in the landlord's house, except such of his proceeds as may be invested in articles that are exempt.

Certainly, it is clear that so far as tools, apparatus and books of a trade are concerned, where the debtor owns them himself, or purchases them with his own earnings, they are exempt alike under either Article 5475 or Article 5490. Under those circumstances, the law means to say that a man's tools, apparatus and books belonging to his trade are exempt from all debts, including claims for rent, unless he mortgages or fixes a lien upon such property himself.

In this case, no mortgage was given the landlord. If the latter insists on more security than the statutes give him, he can rent to such tenants only as will mortgage him their property which is ordinarily exempt from forced sale.

It was the manifest intention of the Legislature to provide that certain property should be exempt unless the owner voluntarily mortgaged it, or fixed a lien upon it.

Our Courts of Civil Appeals have held that tools and animals belonging to a farm tenant are exempt under our statutes unless they were furnished to him by the landlord. This convinces us that these courts have uniformly concurred in the view we now hold that Article 3793 was not intended to provide that the exemption statutes would not apply as against any claim for rent, but only that these exemption statutes would not apply where in conflict with the landlord and tenant statutes.

If the opinion of the Court of Civil Appeals in this case is correct, a man renting a shop would not only lose the tools of his trade for rent, but a man and his family, occupying a residence, would lose

their household and kitchen furniture for rent. We think the law wisely makes an effort to save to every family beds on which to sleep and tools with which to earn a living. On the other hand, realizing that it might be impossible at times to house one's family without giving a mortgage to the landlord on every stick of furniture, it provided that a man could give a valid mortgage of that kind. And, in the same way, the law makes provision for the execution of a valid mortgage on his tools, etc. by a tradesman who has to find a place in which to ply his trade, in order that he may, if necessary, satisfy the demands of the landlord.

The construction we have given these statutes gives effect to all three Articles and makes them workable and consistent with each other. No other construction would do so. The Court of Civil Appeals at Dallas, in an opinion by Judge Finley, in the case of St. Louis Type Foundry v. Taylor, 35 S. W., 691, held:

"If Beard, the original owner of the property, was by trade a job printer, and the articles of property in question were used as necessary or appropriate tools or apparatus for his business, as alleged by claimant, the property is exempt from forced sale. While the owners of residences, storehouses, etc., are given a preference lien upon all property of the tenant placed in the residence or storehouse, or other building, for the payment of rents due or that may become due, this lien is not given upon such property as is exempt by law from forced sale. Sayles' Civ. St., art. 3122a."

Article 3122a, referred to by Judge Finley, contained the same clause as does Article 5490, as now written, with reference to the exemption statutes.

The Court of Civil Appeals at Dallas, in the later case of Campbell v. Honaker's Heirs, 166 S. W., 74, held the same way in an opinion by Judge Talbot.

The Court of Civil Appeals at Austin, in an opinion by Judge Rice, in the case of Harris v. Townley, 161 S. W., 5, says:

"Article 5490, Revised Statutes of 1911, especially provides that the landlord and tenant act is not intended to repeal the exemption laws of this state; and it has always been held by our courts that the exemption statutes should be liberally construed."

Judge Rice, for his court, affirmed a judgment of the trial court which had refused the landlord a foreclosure of his alleged lien on the tools and apparatus belonging to the tenant.

It seems that none of these cases reached the Supreme Court.

We think the Court of Civil Appeals at Dallas and Austin in the cases cited by us have correctly decided the question under discussion. We are convinced that, so far as this particular question is concerned, Article 3793 merely intended to provide that the

landlord and tenant Acts, where inconsistent with exemption Articles, would control. But, since Article 5490 is the only one which could possibly give this landlord a statutory lien on the property in suit, and since it expressly provides that as to it (Article 5490) the exemption statutes shall control, there is no conflict between these two Articles. In enacting Article 5490, the Legislature could have given the landlord a lien on all property in the rented house except household and kitchen furniture and except all the other property listed in the exemption statutes. But, that would have made the statute cumbersome. It seemed to the Legislature to be a much briefer method to merely provide that the Article give a lien on all property in the rented house except that which is exempt from forced sale under the other statutes of this State.

It is assumed by the Court of Civil Appeals that the property in suit is exempt under Articles 3785 and 3788 of our statutes, except for the provisions of Article 3793; that is, that this property constitutes "tools and apparatus" of a "trade". The court does not present this question to us. We have merely passed upon the very question presented and held that Article 5490 does not create a lien in favor of a landlord on property exempt under our statutes. We have simply discussed the various statutes under consideration in this case and their effect upon each other, upon the aforesaid assumed status of the property.

In view of what we have said, we recommend that the second question certified be answered in the affirmative.

The opinion of the Commission of Appeals answering certified questions adopted and ordered certified to the Court of Civil Appeals.