## HINCKLEY–TANDY LEATHER CO. et al. v. HAZELWOOD.

### No. 793.

Court of Civil Appeals of Texas. Eastland.

Jan. 23, 1931.

G. L. Robertson, of Fort Worth, and Chas. H. Clark and L. H. Welch, both of Breckenridge, for appellants.

Ben J. Dean, of Breckenridge, for appellee.

FUNDERBURK, J.

This is an appeal from an order overruling a motion to dissolve a temporary injunction. Hinckley-Tandy Leather Company, having a judgment against W. W. Hazelwood, caused to be seized under execution and advertised for sale one progressive finishing machine belonging to said Hazelwood. Suit was brought by Hazelwood to enjoin the sale and to recover damages. The petition, naming Hinckley-Tandy Leather Company and H. W. Sayle as defendants, alleged that said "Progressive Finishing Machine" was exempt from

execution, in that plaintiff was the head of a family and engaged in conducting and running a shoe shop, that said machine was being used by him as a part of the tools of his trade, and that the same was reasonably necessary and proper in the conduct of said business of a cobbler.

A temporary injunction having issued defendants filed their motion to dissolve it upon three grounds. The second ground, not being urged upon this appeal, may be treated as abandoned. The first was because plaintiff's petition failed to allege the interest in, or connection of, H. W. Sayle with the subject-matter of the suit; he not being designated otherwise than as an individual. The third ground stated in the motion was as follows:

"That the said property levied upon for sale consisted of one Progressive Finishing Machine, an article sometimes used in shoe and harness shops as a convenience in polishing and finishing shoes and harness for the purpose of giving said articles worked upon a more pleasing and attractive appearance before delivery to the cutomer; that said machine is not necessary in carrying on the trade of a shoe or harness repairman, nor is it ordinarily found in such shops of small size; that the same is not such that can be operated by hand but requires motive power such as is provided by an engine, electric motor or the like; that it is not practical nor economical to use such machine unless the shop where the same is used is one doing a large amount of business; that the work done by this machine is ordinarily done by hand by shoe and harness repairmen, and that said machine is a modern implement and it is only in recent years that shoe and harness repairmen have in any way used the same but that the same has always been done by hand."

It will be observed that the motion did not allege that the machine was not a "tool" or "apparatus" belonging to the trade of a cobbler or plaintiff's alleged business of "making and repairing shoes and boots and leather goods." Neither did it allege that plaintiff's shop was "of small size" nor that it was not "doing a large amount of business."

Appellants' first assignment, which is also asserted as a proposition, is the basis of a contention that the trial court erred in overruling the motion to dissolve the injunction because plaintiff's pleading did not state: the interest which H. W. Sayle "had or might have had in the property, or the sale thereof, nor is there any allegation setting up the reason for enjoining him, nor is there established any interest or connection between him and the property described in said writ of injunction." We are unable to sustain this proposition. The testimony showed that H. W. Sayle was sheriff of Stephens county. Plaintiff's petition, although it did not allege that he was sheriff, or, in the matters complained of, was acting as sheriff, does allege an unlawful seizure of the property by both the defendants. This was the gist of plaintiff's complaint, and, if sustained, he would be entitled to the relief sought by the temporary injunction, regardless of the capacity in which the said Sayle was acting. The only purpose of the temporary injunction was served just as well as if Sayle had been designated and complained of as sheriff, and we fail to see where either of the defendants can be prejudiced by the fact that he was not.

By the third ground of the motion, it was sought to be shown that the machine in question was not exempt from execution. It was not alleged that it was not exempt. Neither was there any allegation that the machine was not a tool or apparatus belonging to plaintiff's trade as a cobbler. The issue was therefore sought to be presented by the allegation of facts from which it would be inferred as a matter of law that the machine was not a tool or apparatus belonging to that trade, and for which reason it could not be exempt.

The only facts alleged in the motion having any material bearing on the question of whether the machine was or was not exempt, and which were not to a more or less extent disproved by defendants' own witnesses, were: "That the same (that is, the machine) is not such that can be operated by hand but requires motive power such as is provided by an engine, electric motor, or the like." The testimony more or less conclusively disproved the allegations that the machine was not necessary in carrying on the trade; that it was not ordinarily found in such shops of small size; that it was not practical or economical to use it unless the shop was one doing a large amount of business; and that the work done by the machine is ordinarily done by hand. The testimony may be said to be undisputed that the machine was not such as could be operated by hand, but that same was run by an electric motor. From appellants' standpoint there is, therefore, presented the question whether a machine, such as this was proved to be, can be within the meaning of R. S. 1925, art. 3832, subd. 5, a tool or apparatus belonging to the trade or business of a cobbler if it cannot be operated by hand but requires the use of an electric motor to operate it.

There was no testimony regarding the shape, size, or cost of the machine. Practically the only testimony regarding its nature was by appellants' witness Trent, who testified: "I am familiar with the make of these machines. These machines are simple in their make-up. They are made up of little wheels and sandpaper to grind off leather and rubber heels and things of that nature." Appellants insist that the case should be ruled by the opinion of the Supreme Court in Willis

v. Morris, 66 Tex. 628, 1 S. W. 799, 803, 59 Am. Rep. 634. The portion of the opinion which it is insisted is controlling reads:

"Expensive and complicated machinery propelled by steam-power, or any power other than hand, is not exempt as 'tools of trade;' the latter phrase being held to apply only to simple instruments used by hand. * * * The word 'apparatus' used in the statute may take a wider range, and embrace such minor machinery as may be operated by hand, and such as courts of high authority have held not to be included under the term 'tools,' as used in similar enactments."

The opinion is authority for the proposition that the word "apparatus" is of broader meaning than "tools." We do not construe the opinion as holding that the word "apparatus" would embrace only such minor machinery as may be operated by hand. If so, there would have been no point in saying that the word "apparatus" might take a wider range than the words "tools of trade." The court merely said that "apparatus" would "embrace such minor machinery as may be operated by hand" by way of illustrating the statement that "apparatus" was a word of more comprehensive meaning than "tools of trade." In other words, it would include tools, but what else was not attempted to be stated. The same court had already said: "* * * The word 'apparatus,' is strikingly apt, a generic term of the most comprehensive signification." Green v. Raymond, 58 Tex. 80, 44 Am. Rep. 601. The word "apparatus," as defined in the Standard Dictionary, means "any complex device or machine designed or prepared for the accomplishment of a special purpose." Harris v. Townley (Tex. Civ. App.) 161 S. W. 5, 6. The opinion in that case also quotes the definition from Webster as "any complex instrument or appliance, mechanical or chemical, for a specific action or operation; machinery; mechanism." The exemption statutes have always been liberally construed. In keeping with that policy and the definition given, the opinion in the last-named case declared: "We think it is immaterial that the press in this case was not run by hand but by this gasoline engine." Certainly to hold that the test of exemption of any tool or apparatus belonging to a trade is to be whether or not it is run by hand or by other power would be entirely out of keeping with the policy of liberal construction and warranted by nothing in the statute itself. It will be unnecessary to comment upon the authorities which we think expressly or in principle sustain this view. We merely cite the following: Betz v. Maier, 12 Tex. Civ. App. 219, 33 S. W. 710; St. Louis Type Foundry v. Taylor (Tex. Civ. App.) 35 S. W. 691; Campbell v. Honaker's Heirs (Tex. Civ. App.) 166 S. W. 74; Harris v. Todd (Tex. Civ. App.)

158 S. W. 1189; Mueller v. Richardson, 82 Tex. 361, 18 S. W. 693; St. Louis Type Foundry v. International Live-stock, etc., Co., 74 Tex. 651, 12 S. W. 842, 15 Am. St. Rep. 870; Fore v. Cooper (Tex. Civ. App.) 34 S. W. 341.

It may be admitted that there are some apparent conflicts in the authorities, but they are thought to be more apparent than real.

Thus far we have discussed appellants' contentions pretty much the same as if the case were before us upon the merits by an appeal from a final judgment. Plaintiff, by his pleadings, affirmatively tendered as an issue constituting the very basis of his cause of action that the machine in question was exempt from execution. It is immaterial, so far as the correctness of the court's action, complained of here, is concerned, that he called the machine a tool and not an apparatus. This can be corrected by amendment. The issue of exemption thus tendered by him can only be determined by a trial on the merits. The negative of that issue which appellants assert in their motion can determine nothing except whether or not the temporary injunction should be dissolved. We are therefore not called upon by this appeal to determine the legal correctness of the trial court's order, but rather whether or not the trial court has clearly abused his discretion by continuing to keep the temporary injunction in force until the more formal trial and determination of the issue. In so far as the issue was presented to the court, we are of opinion that the court's action was correct as a matter of law, and, of course, was not an abuse of discretion.

The judgment of the trial court is therefore affirmed.